200 So. 1

**STATE v. FORET.**

No. 36007.

Jan. 6, 1941.

Howell & Deramee, of Thibodaux, for appellant.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Sp. Asst. Atty. Gen., and J. A. O. Coignet, Dist. Atty., of Thibodaux (Carroll Montet, of Thibodaux, of counsel), for the State.

O'NIELL, Chief Justice.

The appellant was convicted of the crime of cattle stealing and sentenced to imprisonment in the penitentiary for not less than twenty months nor more than five years. The indictment charged, specifically, that he stole a steer belonging to one Hilaire Templet. The appeal is based upon a bill of exceptions which was reserved near the end of the trial. When the prosecuting attorney had finished offering his evidence for the State, and announced that he rested the case, subject to the right to offer rebuttal evidence, and the attorneys for the defendant finished offering their evidence, the prosecuting attorney requested the judge to allow the jury to go out and inspect the steer which the defendant was accused of having stolen. The judge asked where the steer was, and the prosecuting attorney replied that Hilaire Templet had brought the steer to town in a truck which he would park near the courthouse. No objection being made by the defendant or his attorneys, the judge granted the request of the pros-

ecuting attorney; and, on the instructions of the judge, the sheriff ordered all outsiders away from the truck, and allowed the members of the jury to inspect the steer in the presence only of the judge and attending officers of the court, and the defendant and his attorneys and the prosecuting attorney. All parties then returned to the court room, and the taking of testimony was completed by the State's offering the testimony of Hilaire Templet in rebuttal of certain testimony which had been offered for the defendant. But there was no testimony offered for the purpose of proving that the steer which the jurors had seen in the truck was the same steer that was alleged to have been stolen from Hilaire Templet. Therefore, the attorneys for the defendant requested that the jury should retire from the court room, and when that was done the attorneys requested the judge to instruct the jurors to disregard any impression that they might have received from their inspection of the steer, because there was no evidence to identify him as the steer which was alleged to have been stolen. The judge refused to so instruct the jury and the attorneys for the defendant reserved their bill of exception.

There were in fact two steers in the truck, one of which was supposed to be the one which the sheriff took from the defendant's pasture and delivered to Templet. The other steer in the truck had nothing to do with the case. No explanation was given as to why Templet brought two steers to court instead of bringing only the steer which was supposed to have been stolen. The judge, in the statement per

curiam attached to the bill of exception, says that both of the steers in the truck were of a red color; and the judge seems to have assumed that Templet's purpose in bringing the unidentified steer, in the truck with the one which was supposed to have been stolen, was to test the ability of the jury to recognize the steer which Templet had described in his testimony as the one which was found in the defendant's pasture and which was taken by the sheriff and delivered to Templet. The judge says that the jurors made a careful inspection of the two steers thus exhibited to them, and had an opportunity to determine whether they saw in the truck a steer bearing the description which Templet had given of the steer which he said was found in the defendant's pasture, and to determine whether the steer which the jurors so recognized—if they did so recognize him—might have been the one which the defendant testified he had bought from a man named Folse. The judge says that Folse testified as a witness for the State that he had inspected the steer which was taken by the sheriff from the defendant's pasture and delivered to Templet, and that that steer did not answer the description of the one which he had sold to the defendant. It seems, therefore, that the only question which the jury had to decide was whether the steer which was found in the defendant's pasture, and which was taken by the sheriff and delivered to Templet, was proved to be the same steer that was missing from Templet's pasture, or might have been the one that the defendant bought from the witness named Folse.

The failure of the attorneys for the defendant to make their objection at the time when the prosecuting attorney proposed to introduce the steer in evidence, that the steer which was about to be introduced had not been identified by testimonial proof, or "authenticated", as the writers on the law of evidence express it, is a matter of no importance, because the attorneys had the right to assume that the prosecuting attorney would make the necessary proof before closing the case for the State; and, if the attorneys had made such an objection at any time before the prosecuting attorney closed his case, the objection would have been met with the answer that the attorneys for the defendant could not control the prosecuting attorney in the order of presenting his evidence.

The judge, according to his per curiam, rested his ruling largely upon the fact that Templet, in his testimony, gave a detailed description of the steer which he said was missing from his pasture and was found several months afterwards in the neighboring pasture of the defendant, and was taken by the sheriff and delivered to Templet. But that testimony did not supply the omission of the prosecuting attorney to offer testimonial proof that the steer which was in the truck, and which was inspected by the jury, was the same steer that was taken from the defendant's pasture by the sheriff and delivered to Templet. Without some such proof of the identity of the steer in the truck he was not admissible in evidence; and the judge should have complied with the request of the attorneys for the defendant

to instruct the jurors to disregard any impression that they might have received from their inspection of the steer in the truck.

Professor Wigmore, in his work on Evidence, deals with this subject,—of allowing the judge or jury to view a thing or a place that is proved to have a direct connection with the crime charged,—under the title of Autoptic Proference, or Real Evidence. In the Third Edition, Vol. IV, Sec. 1157, p. 251, the author refers to the objection that this character of evidence, called Autoptic Proference, is liable to cause an "Undue Prejudice" against an accused person, and on page 254, states the first reason for the danger of such "Undue Prejudice", thus:

"First, there is a natural tendency to infer from the mere production of any material object, and without further evidence, the truth of all that is predicated of it."

In Volume VII of the same work, in Section 2129, on p. 564, the author declares that the rule which requires that a chattel must be identified, or authenticated, by testimonial proof in order to be admissible in evidence is founded upon the same principle that requires that a document must be authenticated in order to be admissible in evidence. And in this connection the author says:

"In short, when a claim or offer involves impliedly or expressly any element of personal connection with a corporal object, that connection must be made to appear, like the other elements, else the whole fails in effect."

In the same section, on page 565, the author says:

"Now, beyond all this, there is a general mental tendency, when a corporal object is produced as proving something, to assume, on sight of the object, all else that is implied in the case about it. The sight of it seems to prove all the rest. Thus, it is easy for a jury, when witnesses speak of a horse being stolen from Doe by Roe, to understand, when Doe is proved to have lost the horse, that it still remains to be proved that Roe took it; the missing element can clearly be kept separate as an additional requirement. But if the witness to the theft were to have a horse brought into the courtroom, and to point it out triumphantly, "If you doubt me, there is the very horse!" this would go a great way to persuade the jury of the rest of his assertion and to ignore the weakness of his evidence of Roe's complicity. The sight of the horse, corroborating in the flesh, as it were, a part of the witnesses' testimony, tends to verify the remainder.

"This tendency, illogical though it be, is deeply rooted in all persons, even the most intelligent and reflective; it has been already specially noticed with reference to the propriety of using autoptic proference (or real evidence) as a source of proof (ante, §§ 1157, 1158). * * *

"This logical element, and also the mental tendency to forget the importance of proving it, exists wherever any personal connection with a corporeal object is assumed in the offer. The necessity of authentication, therefore, applies equally to

chattels,—to a knife, a horse, a coat, or a machine, whenever it is asserted to be connected with a person; and this authentication of objects other than writings is a common necessity of every day's trial practice."

In the same section (2129), on page 569, we find this very pertinent paragraph:

■ "This process of authenticating chattels is ordinarily referred to as identifying them; but the two ideas are distinct, and different principles of Evidence are applied. Identification presupposes that two objects, apparently different, have been referred to, and the issue is whether they are in fact one and identical, not separate objects. Thus, the existence of specific marks, essential to the one, and found also in the other, becomes significant, and the admissibility of this evidence of identity may come into question (ante, § 415), as well as the presumption of identity (post, § 2529). Authentication, however, presupposes a single object only, and refers to it as associated with a person, a time, a place, or other known conditions. Thus, the object itself, when offered, is not relevant unless it is the object that was in fact thus associated with those conditions. Hence, the evidencing of those conditions is necessary; and the principle of Authentication requires that some evidence connecting the object with those conditions be introduced before or at the time of offering the object itself."

In Underhill's Criminal Evidence, Fourth Edition, Chapter 12, evidence consisting of physical property is dealt with under the title "Visual Evidence", and, in

section 115, pp. 148 and 149, the author declares and explains that such evidence must be identified, or "authenticated", as Professor Wigmore says, in order to be relevant, or admissible.

In Wharton's Criminal Evidence, Eleventh Edition, vol. 2, Chapter XI, this kind of evidence is dealt with under the title "Real and Demonstrative Evidence", and in section 762, p. 1292, and section 770, p. 1309, the author declares and explains, under the sub-title "Identity of Article", that the so-called Real or Demonstrative Evidence is not relevant, and hence not admissible, unless it is identified by testimonial proof.

■ The judge, in his per curiam, expresses his conclusion that "irrespective of impressions arising from a physical view of the steer, there was ample evidence before the jury (if accepted as true by the jury) upon which to base a verdict of guilty." The answer to that, of course, is that we cannot know whether the testimony in the case would have convinced the jurors without an inspection of the steer, or steers, in the truck. We cannot know the extent to which the inspection of the steer impressed the jurors, and influenced their verdict. On that subject we paraphrase the quotation from Professor Wigmore, Vol. VII, section 2129, page 565,—viz.:

"Thus, it is easy for a jury, when witnesses speak of a steer being stolen from Templet by Foret, to understand, when Templet is proved to have lost the steer, that it still remains to be proved that Foret took it; the missing element can

clearly be kept separate as an additional requirement. But if the witness to the theft were to have a steer brought to the courthouse, and to point it out triumphantly, 'If you doubt me, there is the very steer!' this would go a great way to persuade the jury of the rest of his assertion and to ignore the weakness of his evidence of Foret's complicity. The sight of the steer, corroborating in the flesh, as it were, a part of the witness' testimony, tends to verify the remainder."

If inadmissible evidence has been introduced against a defendant in a criminal prosecution, over his objection, it matters not how much legal evidence may have been introduced against him; if he is convicted the verdict must be set aside.

The verdict and sentence are annulled and the case is ordered remanded to the district court for a new trial.