1CANNELLA, Judge.
Defendant, Eric Gaines, appeals his conviction of distribution of cocaine. He was sentenced to five years at hard labor, suspended with three years of active probation. He was assessed a $300 fine and court costs, including $200 for the jury cost and a $20 probation fee. His driving privileges were suspended for 90 days and he was ordered to submit to drug screening when ordered to do so. We affirm the conviction and sentence.
On appeal, defendant asserts that the trial court erred in denying appellant’s request for disclosure of the identity of the confidential informant. He also requests a patent error review.
The facts show that on July 1, 1992, St. Charles Parish Sheriffs Deputy, Todd Williams, was working as an undercover narcotics agent with the Gretna Police Department. That evening, Deputy Williams went with a confidential informant to Mary’s Lounge in Gretna, a place known for numerous past drug transactions. While there, Williams and the confidential informant played pool and mingled in the |2crowd. The confidential informant introduced Williams to eight or ten people. One of these introductions was to a black male named Eric. Out of the hearing of the deputy, the confidential informant told Eric that Deputy Williams was interested in purchasing something. A short time later, Deputy Williams followed Eric into the restroom and purchased five rocks of crack cocaine.[1] The confidential informant was not present during this transaction. Deputy Williams made two or three purchases of narcotics from others and left the lounge about 1:00 a.m.
When he returned to the police headquarters, Deputy Williams told other officers that he recognized defendant in one of the police photograph books which he had viewed before he left to go to Mary’s Lounge. Deputy Williams again reviewed the books and picked defendant’s picture out as the man named Eric who sold him the crack cocaine. Subsequently, defendant was arrested and charged with distribution of cocaine, La.R.S. 40:967(A).
A trial by jury was held on May 26 and 27, 1993. At trial, Deputy Williams testified that his narcotics purchase from defendant took about two to three minutes in a well-lit restroom of the lounge. Deputy Williams admitted that during the evening, to facilitate his cover, he drank one or two beers. When he reviewed the police photograph books, Deputy Williams identified defendant based on his picture and not because the picture of defendant was the only one in the book with the name Eric. As to the transaction, Deputy Williams could not remember if his purchase from defendant was the first, second or third drug purchase that he made that night. Deputy Williams had trouble remembering details of the other drug transactions that night, but admitted that all the purchases were from black males. The reason for his vivid memory of the transaction involving defendant was that he reviewed his written *963 report of this case prior to trial. Additionally, during his testimony, Deputy Williams said that he had never misidentified a suspect in 200-300 prior drug transactions and had no doubt about his identification of defendant immediately following the transaction and in court.
| .-¡Defendant testified at trial that he denied selling the narcotics and had never seen Deputy Williams before the criminal proceedings. He stated that he did not sell crack cocaine because his brother had become addicted to crack cocaine and had died as a combined result of cocaine use and a tumor. Because his aunt and grandmother live near Mary’s Lounge, defendant knew that it is a place known for drug sales. Defendant testified that he had only been there once, but not on the night of the alleged drug transaction with Deputy Williams. Defendant said that on the night of the drug transaction he was asleep because he had to get up early the next morning for work at a local hotel. He testified that he always went to bed by 10:00 p.m., without exception, even on New Year’s Eve.
Defendant contends that the trial court erred in denying his pre-trial motion for disclosure of the confidential informant’s identity. He asserts that it was necessary and took away his constitutional right to present a defense because defendant contended that the police officer was mistaken in his identity of defendant. The state argues that since the informant did not participate in the crime, disclosure is not necessary. Additionally, the state contends that defendant’s argument was raised for the first time on appeal.
The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning a crime. It is founded upon public policy and seeks to advance the public interest in effective law enforcement. Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); State v. Dotson, 260 La. 471, 256 So.2d 594 (La.1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972). In Roviaro, the United States Supreme Court held that the problem of disclosure calls for balancing the public interest in protecting the flow of information from confidential informants against the individual’s right to a prepare a defense. In Roviaro, the Supreme Court found that disclosure of the informer’s identity was necessary, reasoning that since the informer and the accused were the sole participants in the transaction, “The informer was the only witness in a position to amplify or l contradict the testimony of government witnesses”. Roviaro v. United States, 353 U.S. at 64, 77 S.Ct. at 630.
Louisiana has recognized the informer privilege and has adopted the Roviaro balancing test. To be entitled to disclosure, defendant bears the burden of showing exceptional circumstances. State v. Dotson, 256 So.2d at 599; State v. Davis, 411 So.2d 434, 437 (La.1982); State v. Bailey, 545 So.2d 682, 684 (La.App. 5th Cir.1989), writ denied, 551 So.2d 1317 (La.1989). Much discretion is vested in the trial court on the question of whether the circumstances warrant disclosure. State v. Babbitt, 363 So.2d 690, 695 (La.1978); State v. Oliver, 430 So.2d 650, 652 (La.1983).
The guidelines for determining when disclosure is necessary are as follows:
“When an informant only supplies the information and does not participate in the transaction, disclosure is not required. State v. Davis, supra, and cases cited therein. On the other hand, when the informant plays a crucial role in the transaction and the defense meets its burden of showing exceptional circumstances justifying disclosure, disclosure is required. Participation in’the alleged criminal transaction is the key; if the informant does not participate, the defendant cannot compel disclosure.”
State v. Quetant, 466 So.2d 567, 568 (La.App. 5th Cir.1985), cited in State v. Bailey, 545 So.2d at 684.
The facts of this case are similar to those in Bailey, a case in which the confidential informant arranged the sales but did not participate. Additionally, the confidential informant’s role here was less than that of the confidential informants in Davis and Que-tant, two other cases in which the Louisiana *964 Supreme Court and this court, respectively, upheld the trial court’s refusal to order disclosure. While more than a mere tipster, the confidential informant here did not play a crucial role in the transaction. In this case, he introduced the undercover deputy and informed defendant that the deputy wanted to purchase narcotics but he was not present for the transaction which occurred sometime later. Further, defendant was unable to show exceptional circumstances justifying the disclosure. Thus, defendant has not met his burden since he is unable to show exceptional circumstances such as in Roviaro and the confidential informant here did not play a crucial role by isparticipating in the criminal transaction. Therefore the trial judge did not err in denying defendant’s request for disclosure of the confidential informer.
Also assigned as error are any and all errors patent on the face of the record. After our review we find none.
Accordingly, defendant’s conviction and sentence are hereby affirmed.

AFFIRMED.

. Laboratory analysis by the Jefferson Parish Crime Lab revealed that this substance was cocaine.