hWALTZER, Judge.
We initially denied the State’s writ application on 28 June 1996 regarding the trial court’s ruling compelling the State to disclose the name of the confidential informer in this case.
The Supreme Court granted the State’s writ application and remanded this matter to this court for briefing, argument and opinion. We have considered all available transcripts, briefs, transcribed statement and attached search warrant and reverse the trial court’s ruling for the reasons set out below.

PROCEDURAL BACKGROUND

Larry Degruy is charged with a violation of LSA-R.S.40:967(A)(1), i.e. that he did “wil-fully and unlawfully possess a controlled and dangerous substance, to wit cocaine, in the amount of 28 grams or more, but less than 200 grams ...”
Degruy posted bond and at his arraignment entered a plea of not guilty. On 31 May 1995 hearings on motion were set and were thereafter continued eight times. At the time of the ninth setting, the defense withdrew its motion to suppress the search warrant. Trial was reset twice and on 23 May 1996, the case was called for trial. New defense counsel filed a motion to disclose the identity of the confidential informant, or in the alternative to produce the informant in camera for inquiry. The court took testimony on the motion to disclose; Degruy was the only witness testifying at the hearing. The trial court ^granted the motion to disclose the name of the confidential informant.

FACTUAL BACKGROUND

[1]

An order of search was signed by a magistrate on 27 March 1995. The application set forth the following:
On Monday, March 27, 1995, Detectives Toye and Brown met with the Cl in order to formulate a plan for a controlled purchase. Once the detectives and the Cl were together Detective Brown searched the Cl to insure he possessed neither contraband nor currency. When Detective Brown was convinced the Cl had neither contraband nor currency Detective Toye gave the Cl the necessary funds to purchase the predetermined amount of crack/cocaine. The Cl then proceeded to the reported location to make the purchase.
Under the cooperative watch of Detective Joseph Thomas the Cl walked in to the rear hallway of 3925 Gibson Street and knocked on the lower left hand door. The door was answered by a black male known to the Cl as Larry. Larry was a dark skinned black male approximately five feet nine inches (5’09”) tall, stocky build and *582 gold teeth in the front of his mouth. The Cl held a brief conversation with Larry. Larry then went inside the apartment and returned to the Cl a short time later. After another brief conversation the Cl handed Larry, U.S. currency and Larry handed the Cl a small object. The Cl received the object with his left hand. The Cl the (sic) walked directly to the prearranged meeting location with a clenched left hand. Upon reaching the meet location the Cl opened his clenched left hand exposing a large rock like object. Detective Toye took the object and examined it. Believing the object to be craek/eocaine Detective Toye proceeded to Police Headquarters to place the contraband on the evidence books.
Once at Police Headquarters Detective Toye conducted a field test of the contraband. The results of the test were positive for properties of cocaine. Detective Toye the (sic) proceeded to Central Evidence and Property to place the crack/cocaine on the evidence books in accordance with N.O.P.D. rules and regulations.
Officer Shelmire filed the evidence under Control No. D13947. Based on the information from the established informant, the evidence acquired through the controlled purchase and the observations of Detective Thomas it is respectfully requested an Order of Search be issued for the lower left hand apartment as you face the building from the rear at 3925 Gibson Street.
LThis warrant was executed on 29 March 1995. At the time of the officers’ entry into 3925 Gibson Street, Larry Degruy told the officers that he was the person they wanted, directed them to a shoe box on the top shelf of a closet in a bedroom, and told them where to find a weapon in the top right hand dresser drawer. Thereafter, a scale, bottle of Inositol powder, one loaded Hi-Point pistol and other items were retrieved from the same bedroom. Degruy was arrested and removed to the narcotics office where he made an inculpatory statement.[2] At the hearing to disclose the confidential informant, Degruy testified that he was not and could not have been the Larry who sold narcotics to the confidential informant at 3925 Gibson Street, as alleged in the application for the order of search. Although De-gruy never alleged that his inculpatory statements directing the police to the contraband at the house or at the narcotics office were coerced or that there was police misconduct, Degruy asserted at the hearing, that he gave an untrue inculpatory statement for humanitarian reasons, in order to protect his girlfriend Danetter Ramee, who was pregnant with his son. Additionally, Degruy’s counsel argues that the “real Larry” who initially sold the drugs at 3925 Gibson Street, could verify that Degruy was the wrong Larry; thus, Degruy’s claim that his statement to the police was made to protect his girlfriend would take on added credibility during trial. Because the confidential informant described the drug pusher as a 5’9” stocky man named Larry, and Degruy does not match this description, Degruy claims entitlement to the Cl’s identity, as it presents an “exceptional circumstance” to prove misidentifieation, or, the arrest of the wrong “Larry”.
^Whether or not Degruy told the police the truth or lied to them about his knowledge and possession of the drugs out of genuine concern for the welfare of his girlfriend, is a question for the trier of fact to determine at the trial of this matter. Degruy insists that if the identity of the confidential informant were to be revealed, he could be called to testify that the storer/distributor of the drugs and paraphernalia during the controlled buy was in fact the other “Larry” described in the application for search,[3] thus bolstering his claim that he gave an inculpa-tory statement to the police to protect his girlfriend. In short, the “wrong Larry defense” is possible only if the C.I. testifies.
The trial court found that exceptional circumstances were present here, because De-gruy needed the identity of the confidential *583 informant to assist in his defense, notwithstanding the fact that the confidential informant had not participated in the charged offense of possession of cocaine, but made a controlled buy only to give the officers probable cause to search the premises at 3925 Gibson Street.
The State alleges that the court below erred when it ordered disclosure of the confidential informant, because the confidential informant participated only in the uncharged distribution of drugs on 27 March 1995 and not in the possession charge on 29 March 1995.

ANALYSIS

The logic behind the ordered disclosure is flawed, because even if the confidential informant were disclosed and stated that he bought drugs from another “Larry”,[4] it was Degruy who upon the officers’ entry into the residence Lied them to the drugs and paraphernalia and gave a statement inculpating himself at 3925 Gibson Street as well as at the narcotics’ office. The actions of Degruy at the Gibson Street address gave rise to his arrest for the charge of possession of cocaine. The State has the burden to prove beyond a reasonable doubt the identity of the person who made these inculpatory statements, who led the police to the contraband, whether the wilful and unlawful possession of cocaine can be attributed to Degruy, and whether in fact the substance is cocaine in the quantities alleged in the bill of information.
It is of no moment as to which “Larry” made the original sale under that scenario. Degruy was not charged with sale of crack/cocaine. The confidential informant’s information was sufficient to support the issuance of the search warrant. Absent any flaws in the warrant itself, the warrant served no other purpose than to demonstrate probable cause sufficient to persuade a magistrate to authorize an order of search so that legal entry could be made into the premises where the above mentioned facts unfolded.

THE LAW

In State v. Hernandez, 513 So.2d 312 (La.App. 4th Cir.), writ denied, 516 So.2d 130 (La.1987), the defendant was charged with possession of 256.6 grams of cocaine. When a search warrant was executed eight adults and several children were present. Hernandez told the police that a briefcase carried out by the police contained “his money” but that the cocaine was not his. The key to the briefcase was found in his pocket. Based on that statement the defendant was the only one arrested, charged and convicted, and this Court affirmed his conviction. In State v. Thomas, 553 So.2d 980 (La.App. 4th Cir. 1989), writ denied, 558 So.2d 568 (La.1990), the State was not required to |6discIose the identity of the confidential informant, where the confidential informant made a controlled buy, and upon execution of the search warrant Thomas stated “all the stuff in the match box is mine.” Once that statement was made the defendant was arrested.
It does not help Degruy to use the “wrong Larry defense” because he himself made the inculpatory statements and disclosures that supported his arrest. Likewise Degruy’s protestations that he did not live at 3925 Gibson Street[5] or did not stay in the room where the drugs were found, does not entitle him to the disclosure of the confidential informant’s identity. The identity of the distributor and purchaser of drugs on another date and time is totally irrelevant to this prosecution. The State has the burden of proving that Degruy actively or constructively possessed the cocaine beyond a reasonable doubt and the factfinder must weigh the evidence on that point along with all the other evidence.
The right to keep the identity of the informant confidential and undisclosed derives from the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials; preservation of their anonymity encourages citizens to fulfill that obligation. Roviaro v. *584 U.S., 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer’s testimony, and other relevant factors. Id. at 62-64, 77 S.Ct. at 629. In Roviaro the confidential informant was an 17active participant and state witness in the illegal transportation of narcotics and had to be disclosed. Where a government informer is the sole participant, other than the accused, in the transaction charged (emphasis supplied) and the informer was the only witness in a position to amplify or contradict the testimony of government witnesses, the confidential informant must be disclosed.
When an informant only supplies the information and does not participate in the transaction, disclosure is not required. State v. Davis, 411 So.2d 434 (La.1982). Participation in the alleged criminal transaction is the key, if the defendant does not participate, the defendant cannot compel disclosure. State v. Quetant, 466 So.2d 567 (La.App. 5th Cir.1985); State v. Gaines, 93-1000, (La.App. 5 Cir. 3/29/94), 636 So.2d 961.
In the instant case the confidential informant did not participate in the crime with which Degruy stands charged. Were we to allow disclosure of the identity of the informer based on the alleged mistaken identification of “Larry” in this case, the identity of every confidential informer would have to be disclosed under circumstances where a defendant claims that he made inculpatory statements for the sake of others and that the controlled buy was made from someone else. Individuals would then be unwilling to cooperate because they might be exposed and thus vulnerable, and prosecutors would dismiss cases rather than endanger informants.
The connexity between Degruy and the contraband, whether and why he made a statement implicating himself, his guilty knowledge and identity are all factual questions for the factfinder which may be inferred from the circumstances of the case. It is the factfinder who will determine whether IgDegruy’s knowledge that illegal drugs were in the area, his access to the area where the drugs were found, his physical proximity to the drugs and the amount thereof constitute sufficient proof to justify a conviction or an acquittal. The confidential informant cannot be called by the State, and no basis exists in this case to conclude that Degruy’s rights are prejudiced by non-disclosure of the confidential informant’s identity.

CONCLUSION

Based on the foregoing, we find that the trial judge erred when he compelled the State to disclose the confidential informer. ACCORDINGLY, THE WRIT APPLICATION IS GRANTED. THE TRIAL COURT’S RULING IS REVERSED.
JONES, J., dissents with reasons.

. The only testimony is that of the defendant. The facts are taken primarily from the arguments of counsel, the State's writ application and the defendant’s motion for disclosure.

. At the hearing to compel the disclosure of the confidential informant, Degruy’s counsel insisted that he did not challenge the statement as to its voluntariness.

. The defendant, in contradistinction to the description of the seller in the application for the order to search is light skinned, is 6’2” tall and weighs 160 lbs.

. Larry Turner was present during the search, but was not charged.

. The bond of the defendant as well as the arrest register lists the defendant’s address as 326 No.Robertson; at the hearing to disclose the informant the defendant gave his address as 1852 No. Rocheblave.