JAMES F. MCKAY III, CHIEF JUDGE |]The defendant appeals his conviction and asserts numerous assignments. Based on the record before this Court, vital portions of the voir dire transcript are unavailable, which warrants the vacating of the defendant’s conviction and sentence and the remanding of the matter for a new trial. A full analysis and discussion follows below. STATEMENT OF CASE On January 16, 2013, the State charged Tyrone Handy (defendant) with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(B)(1); possession of marijuana, third or subsequent offense, a violation of La. R.S. 40:966(E)(c)(i); and misdemeanor possession of drug paraphernalia, a violation of La. R. 40:1023(C). The defendant pled not guilty to all charges at his arraignment on January 22, 2013. On October 25, 2013, the court granted the State’s Prieur motion. On February 6, 2014, the trial court denied the defendant’s motions to suppress the statement and evidence and found probable cause for possession with intent to distribute cocaine, possession of marijuana and misdemeanor possession of drug paraphernalia. |2On May 20, 2015, the trial court denied the defendant’s Motion to Reveal the Identities of the Confidential Informants (“Cl”). On May 21, 2015, the jury found the defendant guilty of attempted possession with intent to distribute cocaine and possession of marijuana, second offense. The trial judge found the defendant guilty of misdemeanor possession of drug paraphernalia. On June 29, 2015, the defendant filed a Motion for New Trial, which the court denied July 9,2015. On September 4, 2015, the judge sentenced the defendant to thirteen years for attempted possession with intent to distribute cocaine; two years at hard labor for possession of marijuana, second offense; and six months for misdemeanor possession of drug paraphernalia, sentences to run concurrently. That same day, pursuant to La. R.S. 15:529.1 (Louisiana Habitual Offender Law), the State multiple billed the defendant charging him as a fourth felony offender. On March 3, 2016, the defendant was adjudicated a third felony offender based upon one prior conviction for distribution of cocaine and another prior conviction for attempted possession with intent to distribute cocaine. The trial judge vacated the defendant’s previous sentences and resen-tenced him to thirty years. STATEMENT OF FACT Detective Gabriel Favaroth of the Major Case Narcotics Division recounted that his investigation in the instant prosecution began on November 14, 2012, when he received information from a “Cl” that “Brother” (A.K.A. Tyrone Handy) was selling crack cocaine at the LaQuinta Inn on the 1-10 Service Road in New Orleans East. Detective Favaroth set up a controlled buy from “Brother,” who was ladealing from room 408. Detective Favar-oth drove the Cl to the location, searched him for contraband and then provided the Cl with marked bills to make the purchase. Detective Favaroth accompanied the Cl to the fourth floor of the inn to observe the purchase from a concealed vantage point in the hallway. The Cl gave the suspect $200.00 in marke,d bills. The suspect handed narcotics to the Cl, who then returned to Detective Favaroth, surrendered the narcotics and left the area. Detective Favaroth relocated to police headquarters and deposited the contraband in Central Property and Evidence under item number K19419-12. Two days after the controlled buy, Detective Favar-oth obtained a search warrant for the room from which the defendant, aka “Brother,” sold the narcotics to the CL Detective Favaroth learned the defendant would frequent the LaQuinta Inn between noon and 10:00 p.m. and drove a white Tundra truck, which had red cardboard mounted in the area the license plate should have been, so Detective Fa-varoth positioned officers in the 12000 block of the 1-10 service road, while he waited near the Bullard Avenue off-ramp, to intercept the defendant before he could make it to the LaQuinta Inn. When Detective Favaroth spotted the defendant’s vehicle, he radioed the other officers. Detective Henly stopped the defendant on the service road and relocated him to the inn’s parking lot. Detective Favaroth gave the defendant the warrant to search room 408. The defendant surrendered the room key to Detective Favaroth.[1] The defendant remained with Sergeant Anthony Rome in the parking lot while Detective Favaroth and other officers proceeded to search room 408. Detective Favaroth knocked on the door. |4When he received no reply, he entered the room. After confirming the room was empty, Detective Favaroth radioed Detective Henly to bring a narcotics dog to the room.' Officers confiscated a digital scald, a razorblade, baking soda, one glass beaker and five plastic sandwich bags containing white rock-like substances. Detective Favaroth retrieved one bag of vegetable matter plus $531:00 from the defendant’s pocket, all of which were deposited in Central Property and Evidence. Detective Derrick Burke also assisted Detective Favaroth in securing room 408, and in the execution of the search warrant obtained for that room. Detective Burke testified that based on his observation, expertise and training he concluded that the defendant was making crack cocaine and packaging it for distribution. Detective Joseph Hazelett of the NOPD Major Case Narcotics Unit participated in this investigation. Detective Hazelett and other officers accessed room 408 with a key given to them by the defendant. Several days after the defendant’s arrest, Detective Hazelett accompanied Detective Favaroth and Sergeant Rome to the La-Quinta Inn, seeking footage from video surveillance of the inn; however, the surveillance camera on the fourth floor was not working at the- time of the incident; Sergeant Anthony Rome "of the Major Narcotics Unit was part of the take-down unit, which apprehended the defendant driving a white Toyota Tundra truck. Sergeant Rome transported the defendant to the LaQuinta Inn. Sergeant Rome testified that several days after the search and the defendant’s arrest, he returned to the La-Quinta Inn in search of security camera footage, but none was located because the video system on the fourth floor was not operational during the time period. | fiDeputy Chris Henly, was an NOPD Major Case Narcotics Detective in 2012. He assisted in the operation by stopping the defendant’s vehicle. He also relocated to room 408 at the LaQuinta with his canine who alerted to the presence of narcotics in the entertainment .center where four bags of crack cocaine were retrieved. Glen Gilyot testified by stipulation as an expert in the examination and analysis of controlled substances. Gilyot tested the contraband containing varying amounts of rock-like substances*—cocaine, and one bag of vegetative material—marijuana. Gilyot also said that a scale and razorblade seized in this case contained cocaine residue.] The defense witness Ms. Anastasia Brown testified that she was the front desk manager of the LaQuinta Inn in New Orleans East in November 2012. She testified that room 408 was not rented to the defendant on that day but rather to a woman whose name she could not recall. Ms. Brown stated that the video surveillance system for the entire inn, contrary to the officer’s testimony, was operational on November 19, 2012, and that the police did not ask to view any surveillance videos. She said she was sure the system was working because she was responsible for its maintenance. Mr. Gene Durand testified that he was the general manager of the LaQuinta Inn in November 2012. Durand- said his employment at the inn began at the beginning of November 2012, and at that time the surveillance cameras were not recording the activity on the premises, only monitoring the area. He verified that there were incidents of prostitution at the inn. He added that the lock on the back door to the inn did not lock properly in November 2012 so that anyone could access the inn undetected. | (¡NOPD Detective. Darren Brazley testified that from June 2012 to the time of the trial there were approximately one hundred 911 calls concerning the La Quinta Inn reporting drug activity. ERRORS PATENT A review for errors patent on the face of the record reveals one. The defendant’s sentence is illegally lenient. The defendant was adjudicated a third felony offender for his conviction of attempted possession with intent to distribute cocaine, La. R.S. 40:(979)967(A)(1), and was sentenced to thirty years. Louisiana’s Habitual Offender Law provides that any sentence imposed thereunder shall be without benefit of probation or suspension of sentence. See La. R.S. 15:529.1(G). In this case, the trial judge failed to restrict those benefits when sentence was imposed. However, La. R.S. 15:301.1(A) provides that in instances where the statutory restrictions are- not recited at sentencing, they are deemed contained in the sentence whether or not specified by the sentencing court, and are therefore statutorily effective. Pursuant to State v. Williams, 2000-1725, pp. 10-11 (La. 11/28/01), 800 So.2d 790, 798-799, the sentence is deemed to have been imposed with the restriction of benefits even in the absence of the district court delineating them. Accordingly, there is no need for corrective action. ASSIGNMENT OF ERROR NUMBER 1 In his first assignment of error, the defendant argues he is entitled to reversal of his conviction and sentence, and a new trial, because the record in this matter is incomplete, given that the voir dire transcript does not provide a basis upon which it can be determined whether his challenge for cause was improperly denied by the trial court. 17La. Const, art. I § 19 guarantees defendants a right of appeal “based upon a complete record of all evidence upon which the judgment is based.” Additionally, La. C.Cr.P. art. 843 provides in pertinent part: In felony cases,[... ] the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel. Nonetheless, an incomplete record may be adequate for Ml appellate review. State v. Thomas, 92-1428, 93-2083 (La. App. 4 Cir. 5/26/94), 637 So.2d 1272, 1274. The Louisiana Supreme Court enunciated a three-part standard for reviewing incomplete record claims. State v. Frank, 99-0553, pp. 20-21 (La. 1/17/01), 803 So.2d 1, 19-20. First, “[mjaterial omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal.” id., 99-0553,p. 20-21, 803 So.2d at 19-20 (citing State v. Robinson, 387 So.2d 1143. (La. 1980) (finding omissions material as substantial portions of the record were missing, including the testimony of four state witnesses, voir dire examination of prospective jurors, and the prosecutor’s opening statements)); See also State v. Diggs, 93-0324 (La. App. 4 Cir. 6/29/95), 657 So.2d 1104 (finding unavailability of witness testimony required a new trial because it could not be determined whether the missing testimony was substantial or inconsequential). Second, “inconsequential omissions or slight inaccuracies do not require reversal.” Frank, 99-0553, p. 21, 803 So.2d at 20 (citing State v. Goodbier, 367 So.2d 356, 357 (La. 1979) (declining to reverse when record did not include voir dire examination transcript and the court reporter’s affidavit indicated that nonobjections were made by the attorneys, during voir dire); See also State v. Lyons, 597 So.2d 593 (La. App. 4th Cir. 1992). Third, “a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. Frank, 99-0553, p. 21, 803 So.2d at 20 (citing State v. Castleberry, 98-1388, p. 29 (La. 4/13/99), 758 So.2d 749, 773). “Prejudice is presumed when a defendant’s challenge for cause is erroneously denied by a trial court and that defendant exhausts his peremptory challenges.” State v. Thomas, 14-0510, p. 17 (La. App. 4 Cir. 5/20/15), 171 So.3d 959, 971 (citing State v. Odenbaugh, 10-0268, p. 24 (La. 12/6/11), 82 So.3d 215, 237). In this case, the court reporter filed, a certificate dated January 25, 2017, attesting that she was unable to provide a transcript of the in-chamber proceedings regarding the peremptory and cause chai-lenges because her computer “crashed.” The portions of the voir dire that are transcribed concern objections during the panel questioning. However, the portions of the record pertaining to the trial court’s consideration of peremptory and cause challenges are not included. The record contains an affidavit from defendant’s trial counsel certifying the defense exercised all of its peremptory challenges on potential jurors 2, 9, 10, 12, 16, 20, 25, 28, 30, 32 and 34 of the venire; the defense challenged potential juror 20 for cause, which was denied by the court; and the State challenged potential juror 21 for cause which was granted, over defense objection. In State v. Pinion, 2006-2346 (La. 10/26/07), 968 So.2d 131, the record contained neither a transcript of the bench conferences nor any documentation showing which jurors were challenged for cause by the defense or stricken by the defense with peremptory challenges. The Supreme Court found that although there |3was evidence in the record that the defense exhausted its peremptory challenges, the lack of any documentation, i.e., minutes or jury strike sheets, as to the challenges for cause prejudiced the defendant. Id., 06-2346, p. 9, 968 So.2d 131, 135. Therefore, the Supreme Court reversed the defendant’s conviction and sentence for lack of documents in the record which would have indicated whether the trial court correctly denied any challenges for cause. Id. The difficulty in this case, as in Pinion, is the fact that the discussions of the jury challenges are not available and the record does not contain any documentation, i.e., minute entries, jury strike sheet—from which it can be determined whether there was a basis for the challenge for cause that the defense brought and was improperly denied by the trial court, thereby causing the defense to exercise a peremptory challenge against a juror. The record does not contain enough information for defendant to effectively challenge the denial of his challenge for cause. Based on the holding in Pinion, other applicable jurisprudence and the record before us, this assignment has merit and requires that we vacate the defendant’s conviction and order the trial court to have a new trial. Although we find that the defendant’s first assignment of error is dispositive of this appeal, we will address the defendant’s remaining assignments of error. The defendant’s assignment of errors number 2 and number 3 both involve issues concerning the State’s “Prieur Notice”, the notice of intent to offer evidence of other crimes pursuant to State v. Prieur, 277 So.2d 126 (La. 1973). We preface the following discussion with a brief rendition of the State’s Preiur evidence against the defendant. Prieur incident: | November 14, 2008; Possession of crack cocaine and marijuana Detective Mike Dalferes testified that on November 14, 2008, he participated in the investigation and arrest of the defendant for possession of crack cocaine and possession of marijuana. Detective Dalferes recalled that his investigation of the defendant stemmed from information supplied by a confidential informant and based on that evidence, Detective Dalferes obtained a search warrant for a residence, which, in turn, led to officers conducting surveillance of a room in the Gentilly Econo Lodge Motel. The officers observed suspected narcotics trafficking—people coming to the room and staying a short time and then leaving. The officers stopped a suspect they witnessed make a purchase at the room and recovered two pieces of crack cocaine and some crack pipes. The officers continued to surveil the motel and intercepted the defendant when he attempted to leave. They returned him to the motel room, which they entered via the key the defendant supplied. The officers found crack cocaine, scales, plastic bags, and marijuana in plain view in the room and arrested the defendant. Sergeant Anthony Rome arrested the defendant in 2008 after officers executed a search warrant on a room of the Econo Lodge on Chef Menteur Highway and confiscated marijuana, crack cocaine, a scale, baggies and a razorblade. The defendant had approximately $700.00 at the time of the arrest. Prieur incident: July 29,2009; Distribution of Cocaine Detective Derrick Burke of the NOPD Major Narcotics Division was the lead investigator in the July 29, 2009, investigation of the defendant. Detective Burke explained that his division investigated narcotics activity through In surveillance, from complaints and reports from private citizens, CIs and undercover operations. Pursuant to information received from a Cl, Detective Burke obtained a search warrant for the defendant’s apartment, located in the 8000 block of Trapier Court. The search yielded drug paraphernalia, cocaine, a glass measuring beaker containing cocaine residue, a digital scale, razorblades and plastic baggies, all of which were in plain view upon entering the apartment. The officers confiscated over $2,000.00 from the defendant. In addition, two other suspects were arrested with the defendant. Detective Burke testified that the defendant pled guilty to the 2009 narcotics charge. During cross-examination, Detective Burke said the Cl made a controlled buy from the defendant at his residence. Detective Burke observed the buy, through binoculars, while seated in his vehicle, which was parked across the street. Detec-five Burke admitted he could not see the crack cocaine exchanged because the rock was so small, but he verified the substance as crack when the Cl surrendered it to him. Pursuant' to his observation, Detective Burke obtained a search warrant for the defendant’s residence. Prieur incident: February 14, 2005; possession of marijuana, first offense The trial' Court accepted NOPD Officer Joseph Pollard as an expert in the field of fingerprint analysis. Officer Pollard identified a fingerprint card, bearing "the defendant’s fingerprints, which was taken on May 19, 2015 by Officer Jackson. Officer Pollard identified a certified copy of a 2004 arrest register in the defendant’s name. Officer Pollard compared the fingerprints on State’s Exhibit 16 to the fingerprints on State’s Exhibit 15 and determined that both sets of fingerprints belonged to the defendant. haNext, Officer Pollard identified as the certification packet for Orleans Parish under case no. 450-874 pertaining to a prior conviction. Officer Pollard’ compared the fingerprints on State’s Exhibit 15 to the fingerprints on the completed guilty plea form contained in State’s Exhibit 17. He could not determine a match because-the prints on the guilty' plea form were too dark. Instead, Officer Pollard obtained fingerprints, which were éontained on the back of the bill of information, contained in the original case file no. 450-874. He compared the fingerprints on the bill of information to the fingerprints on State’s Exhibit 15 and concluded that the prints on the bill of information in State’s Exhibit 17 matched the fingerprints on State’s Exhibit 15 and belonged to the defendant. Officer Pollard testified, that the guilty plea form dated February 14, 2005; contained in State’s Exhibit 17 reflected that the defendant pled guilty to possession of marijuana, first offense, Prieur incident: February 15, 2011; distribution of cocaine Officer Pollard also testified as to the certified copy of the fingerprint card, from an arrest register dated July 29, 2009, bearing the defendant’s name and pertaining to an arrest for possession of Schedule II drugs and drug paraphernalia. Officer Pollard compared fingerprints on State’s Exhibit 15 with the fingerprints in State’s Exhibit 19 and found that the two sets of prints were identical and belonged to the defendant. Continuing, Officer Pollard testified that the arrest card bearing- the defendant’s name and fingerprints relative to a certification pack containing a Boykin[2] form for a guilty plea to distribution of cocaine on February 15, 2011. | ^Officer Pollard compared the fingerprints on States Exhibit 15 to the fingerprints contained in State’s Exhibit 20. The prints belonged to the defendant. Officer Pollard identified State’s Exhibit 21 as a certified copy of an arrest card in case no. 491-160 bearing the defendant’s name and dated August 23,2009. The comparison of the fingerprints on State’s -Exhibit 21 with State’s Exhibit 15 produced a positive match between the sets of prints. Next, Officer Pollard examined the certification pack for possession with intent to distribute cocaine. Officer Pollard compared the fingerprints contained in State’s Exhibit 22 with those of State’s Exhibit 15. He concluded the fingerprints on State’s Exhibit 15 and those contained in State’s Exhibit 22 were from-the same person. Officer Pollard had no doubt that all of the fingerprints, contained in the previous documents were a match to the defendant based upon a comparison with the prints on State’s Exhibit 15. ASSIGNMENT OF ERROR NUMBER 2 In a second assignment, the defendant argues the trial court erred by-not ordering the State to disclose the names or production at trial of the informants whose actions are depicted in the State’s Prieur notice. The defendant reasons his inability to confront the informants denied him the right to confront the witnesses against him. It is well settled that the State is permitted to withhold the identity of a confidential informant from an accused. La. C.E. art. 514.[3] Strong public policy | usupports the informer privilege since it seeks to further and protect the public’s interest in effective law enforcement by allowing citizens to'supply information to officials without fear of reprisal from those who are the focus of the information. Roviaro v. United States, 353 U.S. at 59, 77 S.Ct. 623; State v. Dotson, 260 La. 471, 256 So.2d at, 606 (La. 1971) (on rehearing); cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972); State v. Degruy, 96-1463, p.6 (La. App. 4 Cir. 5/14/97), 696 So.2d 580. A confidential informant’s identity will be divulged only under exceptional circumstances for the prevention of an injustice. State v. Dotson, 256 So.2d at 606. The problem is one that calls for balancing the public interest in protecting the flow of information against an individual’s right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime .charged, the possible defenses, the possible significance of the informer’s testimony and other relevant factors. Roviaro, 353 U.S. at 62-64, 77 S.Ct. 623. The identity of an informer should be made known only when a defendant’s right to prepare his defense outweighs the need for protection-.of the flow of information. State v. Wolfe, 630 So.2d 872 (La. App. 4th Cir. 1993) citing Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). When an informant only supplies the information and does not participate in the transaction, disclosure is not required. State v. Davis, 411 So.2d 434, 436 (La. 1982). ItfiOn the other hand, when the informant plays a crucial role in the transaction and the defense meets its burden of showing exceptional circumstances justifying disclosure, disclosure is required. Participation in the alleged criminal transaction is the hey, if the informant does not participate, the defendant cannot compel disclosure. State v. Degruy, 96-1463(La. App. 4 Cir. 5/14/97), 696 So.2d 580, citing State v. Quetant, 466 So.2d 567, 568 (La. App. 5 Cir. 1985) (emphasis supplied). The trial judge’s determination of this issue is entitled to much discretion. State v. Dotson, 260 La. 471, 256 So.2d 594 (La. 1971). “The courts have placed a heavy burden on the accused to specify concrete reasons why he needs to know the identity of the informant.” State v. Davis, 411 So.2d at 436 (La. 1982). In State v. Degruy, 96-1463 (La. App. 4 Cir. 5/14/97), 696 So.2d 580, the NOPD staged a controlled purchase of cocaine between its confidential informant and the defendant. From that purchase, the NOPD obtained a warrant to search the defendant’s residence and recovered a large amount of cocaine. The defendant was charged with possession of the cocaine, which was recovered during the search of his residence. He was not charged with the earlier controlled purchase which was used as the basis to obtain the search warrant. The defense filed a Motion to Disclose the Identity of the Cl,- which the trial court granted. The State sought supervisory review of that ruling. This Court denied the State’s writ. However, the Supreme Court granted the State’s writ and remanded the matter. After remand, this Court ruled in the State’s favor, finding that the trial judge erred when he compelled disclosure of the Cl’s identity because participation was the key factor and as the Cl did not participate in the offense upon which the search |1fiwarrant was based,, the defense was not entitled to disclosure. State v. Degruy, 696 So.2d at 584. Similarly, in State v. Clark, 05-61 (La. App. 5 Cir. 6/28/05), 909 So.2d 1007, Detective Zemlik of the Gretna Police Department testified that a Cl advised him that a subject known, as “Shorty” was selling crack cocaine from a residence in Gretna, Louisiana. Detective Zemlik staged a controlled buy. From a concealed vantage point, Detective Zemlik observed the Cl engage in a hand-to-hand transaction with an individual at the front door of the house. When the Cl returned to Detective Zemlik, he had one off-white colored rock-like substance. Based on the controlled purchase, Detective Zemlik. applied for, and obtained, a search warrant for the residence. Detective Zemlik and other narcotics officers executed the warrant at about 5:10 a.m. on September 12, 2002. The search resulted in the seizure of forty-three rocks of crack cocaine. State v. Clark, 05-61, pp. 2-4; 909 So.2d at 1009-1010. Clark filed a Motion to Disclose the Identity of the Confidential Informant, arguing that because the informant played a crucial role in the transaction that led to his arrest, he was entitled to disclosure of the informant’s identity. The State countered, arguing that because the charge in the case was actually based on the evidence seized in the search of the apartment, and that because the informant played no part in the transaction which led to Clark’s arrest, Clark was not entitled to the informant’s identity. The trial court granted the motion; however, the Fifth Circuit reversed the trial court ruling: .. .The Cl’s drug purchase supplied Zemlik with the probable cause he needed to obtain the search warrant. But the informant’s participation was not integral to the transaction (i.e., the search) that uncovered the cocaine that was the basis for the instant charge. Clark failed to show that the C.I.’s testimony was crucial to a fair trial. Even if the Cl had testified that someone other than Clark sold him the cocaine on September 9, 2002, such testimony would have had little or no 117bearing on the outcome of the trial. Clark was not charged with distribution of cocaine on September 9, but with the possession of cocaine with intent to distribute on September 12, 2002. Id., 2005-61, p. 14, 909 So.2d at 1015-1016. In this case, the search warrant was signed by a magistrate on November 16, 2012. The application for the warrant set forth in pertinent part: On Wednesday November 14, 2012, Detective Gabriel Favaroth ... met with a confidential informant, who advised [him] of a black male subject that goes by the name of “Brother.” The subject .. .would sell crack cocaine from his hotel room (LaQuinta Hotel), located at 12340 I—10 Service Road Room 408. The confidential informant stated to Detective Favaroth that unknown subjects would enter the hotel and proceed to the fourth floor. The subjects would then knock on Room 408 door, which would be immediately answered by .. .“Brother.” ... “Brother” would immediately exit room (408) and began to conversed (sic) with the unknown subjects. After conversing, the unknown subjects would give ... “Brother” an unknown amount of U.S. currency. [“Brother”] ... would then enter the room of 408 [of the hotel]. After a brief moment inside ... “Brother” would quickly return, giving the contraband to the buyer. [“Brother”] is described as a black male, about 6’0 to 6’2" in height, heavy build, age range between 30 to 35 years old, mouth full of gold teeth in upper and lower part of mouth, with twist ham style. It should be noted that the confidential informant has gave (sic) reliable information in the past, which resulted in arrest and convictions. The confidential informant also stated that the knowledge of ... “Brother” selling (crack cocaine) was obtained by being present and personally observing him selling “crack cocaine” from room 408 [of the hotel] ... in the past 72 hours. The confidential informant related that a purchase could be made from ... “Brother” if provided with the necessary funds. Therefore, Detective Fa-varoth secured an amount of two hundred dollars in U.S. currency from the major case narcotics funds [and] ... provided the C.I. with the above listed currency ... Detective Favaroth then formulated a plan that would have the confidential informant make a controlled purchase from ... “Brother” at [the hotel] ... Room number 408 ... The plan also required that Detective Favaroth conduct a visual surveillance of the target location while the confidential informant approached the said location. Prior to making the purchase, Detective Favar-oth searched the confidential informant for contraband and/or valuables, to protect the integrity of the purchase and none were found. Detective Favaroth then provided the confidential informant with the above U.S. currency to make the controlled purchase. Detective Favaroth then drove the confidential informant to the [hotel] ... The confidential informant exited the said vehicle and proceeded to Room number 408. Detective Favaroth also exited the unmarked vehicle and proceeded to the same location. The confidential informant along with | i8Petective Favar-oth rode the elevator to the fourth floor and exited. Detective Favaroth stood near the elevator and the hallway area while the C.I. walked to the hotel room 408. The Cl knocked on the door, which was immediately answered by ... “Brother.” The target subject was clad in all dark clothing. They both then conversed for a moment. After conversing, the Cl gave ... “Brother” the pre-re-corded currency. [“Brother”] ... accepted the U.S. currency and entered the hotel room 408 while the Cl waited in between the door and the hallway. After a brief moment inside, [“Brother”] ... came back to the front door and gave the Cl an object with his right hand. The Cl looked at the object before departing. [“Brother”] ... then went back into the room 408, closing the door. The Cl then returned to the vehicle. Detective Favaroth also returned to the unmarked vehicle and drove the C.I. out of the area. Once inside the vehicle, the C.I. relinquished one clear piece of plastic containing three pieces of a white rock like substance believed to be crack cocaine to Detective Favaroth. Detective Favaroth relocated the C.I. to a secure area to be released and searched, but no other contraband was found. Detective Favaroth also tested the contraband using NIK test kit “G”, which yielded a positive reaction for crack cocaine. Detective Favaroth relocated to central evidence and property where he deposited the evidence in the narcotics depository. Detective Favaroth also conducted a computer check of the nick name of “Brother” which revealed a subject fitting that description, the name which was revealed was Mr. Tyrone Haney B/M 04/19/1974... As the record in this case shows, the defendant was arrested on November 19, 2012, and charged on January 16, 2013, with possession with intent to distribute cocaine, possession of marijuana, second offense, and possession of drug paraphernalia. As in the Clark and Degruy cases, the Cl in this case was not a participant in the crime for which the defendant was convicted. Although the Cl participated in the controlled buy on November 14, 2012, the defendant was not charged with that crime. The defendant was only charged with the crimes which occurred on November 16, 2012, the date on which the search warrant was executed. As for the defendant’s claim he should have been provided with the identities of the informants of the three inei-dents testified to at trial—the instant case (possession with intent to distribute cocaine) and the two prior incidents | ^admitted as Prieur evidence—there is no indication in the record that any informant in those incidents was involved in the incident giving rise to the charges in those cases. There has been no. showing of an abuse of the trial court’s discretion in not ordering disclosure of the informant’s identity. This assignment has no merit. ASSIGNMENT OF ERROR NUMBER 3 In a third assignment, the defendant alleges he was denied the right to present a defense because the trial court allowed the State to introduce evidence of crimes not contained in its Prieur notice. He maintains that admission of those unnoticed bad acts precluded investigation of the incidents, subpoenaing witnesses and conducting research ' on legal questions raised by the acts. The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense. State v. Griffin, 2015-0125 (La. App. 4 Cir. 9/16/15), 176 So.3d 561, 575, writ denied, 2015-1894 (La. 11/7/16), 208 So.3d 896, reconsideration not considered, 2015-1894 (La. 1/25/17), 215 So.3d 262. The défendant' in this case has not identified the acts or crimes he complains were erroneously admitted without inclusion in the State’s Prieur notice; however, a review of the record indicates the State disclosed three prior incidents it sought to offer evidence of at trial: 1) an incident on August 23, 2009, identified by NOPD item # H-31495-09; 2) an incident on July 29, 2009, identified by NOPD item # G-40699-09; and 3) an incident on November 14, 2008, identified by NOPD item #K-16794-08. At the trial of this matter, the State offered the testimony of Sergeant Rome, Detectives Dalferes and Burke as to the November 14, 2008, and July 29, 2009 12f)incidents. Moreover, the State produced proof of the defendant’s convictions from fingerprints taken from arrest records and certified pen packs pertaining to those two incidents. Likewise, with regard to the August 23, 2009, incident, the State proved the defendant’s conviction through fingerprints taken from that arrest and a certified pen pack of that conviction under Orleans Parish Criminal District Court case No. 491-160 (NOPD item # H-31495-09). Although the proof' of the defendant’s prior conviction for possession of marijuana was not included in the Prieur notice, he cannot show any prejudice. The defendant’s prior conviction for possession of marijuana was clearly offered as the predicate to possession of marijuana, second conviction, with which the defendant had been charged. The defendant was aware that the State would prove the possession of marijuana, second conviction via the pri- or conviction because count 2 of the bill of information filed on January 16, 2013, included the prior conviction. This assignment is meritless. ASSIGNMENT OF ERROR NUMBER 4 In a fourth assignment, the defendant claims the trial court erred by denying his motion to suppress the evidence and statement. More particularly, the defendant complains the key to hotel room 408, the money and the marijuana in this case were illegally seized from his person without a warrant, rendering the evidence inadmissible at trial. Trial courts are vested with great discretion when ruling on ,a motion to suppress and, consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Long, 2003-2592, p. 5 (La. 9/9/04), 884 So.2d 1176, 1179 (citations 121 omitted); State v. Oliver, 99-1585, p. 4 (La. App. 4 Cir. 9/22/99), 752 So.2d 911, 914 (trial court vested with great discretion when ruling on a motion to suppress). The district court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard and the district court’s ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Pham, 2001-2199 (La. App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Accordingly, “on mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo,” Id. (citation omitted). “Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts.” Id. (citation omitted). The trial court in this matter conducted a hearing on the motion to suppress on February 6, 2014. At the hearing, Detective Favaroth testified he had previously testified as an expert in the sale and distribution of narcotics. The detective recounted the November 19, 2012, sequence of events which led to the defendant’s arrest for distribution of cocaine. Detective Favaroth said he received information from an informant concerning the sale of narcotics from room 408 of the LaQuinta Inn in New Orleans East. He set up a controlled purchase between the informant and the defendant, known at that time as “Brother,” on November 14, 2012. Detective Favaroth watched the informant knock on the door to room 408 and engage the defendant in a hand-to-hand-transaction. The informant gave the contraband to Detective Favaroth. Pursuant to that transaction, Detective Favaroth obtained a search warrant for room 408. NOPD officers set up surveillance of the surrounding areas in order to locate the defendant. The defendant was stopped while driving his truck on the service road and transported 122⅜0 the hotel parking lot where he was given a copy of the search warrant for room 408. At that point, the defendant told the officers he had a key to room 408 and gave it to Detective Favaroth. Officers accessed the room, executed the search warrant and seized cocaine, scales, sandwich bags, a glass beaker and razorblades. At that'point, the defendant was placed under arrest, after which marijuana was found on his person during a search incident to the arrest. As the record indicates, no evidence or statement was obtained from the defendant unconstitutionally. Although the defendant now argues he was detained “away from the site of the search warrant,” he was in a vehicle en route to the hotel, just moments from the location, so the officers were within their authority to detain him temporarily. See State v. Thompson, 2011-0915 (La. 5/8/12), 93 So.3d 553; State v. Gray, 2011-1356 (La. App. 4 Cir. 10/3/12), 101 So.3d 515, 521. In addition, contrary to the defendant’s argument, he was not under arrest during the detention, consequently, his statement indicating he possessed the key to room 408 was given freely and voluntarily. Only after the cocaine and drug paraphernalia were located in the hotel room and probable cause for an arrest had been established was the defendant arrested. The money and marijuana found on the defendant were obtained from a valid search incident to arrest. This assignment has no merit. ASSIGNMENT OF ERROR NUMBER 5 By this assignment, the defendant complains he was unfairly prejudiced by the non-expert opinion testimony given by Detectives Burke and Favoroth. J^gThe testimony of a lay witness, who is not testifying as an expert, in the form of opinions or inferences is limited to those opinions or inferences that are rationally based on the perception of the witness and are helpful to a clear understanding of the testimony or the determination of a fact in issue. La. C.E. art. 701. It is well-settled that a law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert. State v. Jackson, 2015-0809 (La. App. 4 Cir. 5/25/16), 193 So.3d 425, 437-438 reh’g denied (June 9, 2016), citing State v. Griffin, 14-251 p. 21 (La. App. 5 Cir. 3/11/15), 169 So.3d 473, 487. A reviewing court must ask two questions to determine whether the trial court properly allowed lay opinion testimony: (1) was the testimony speculative opinion evidence or simply a recitation of or inferences from facts based upon the witness’ observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error. See State v. McClure, 14-253 (La. App.5 Cir. 3/11/15), 169 So.3d 510, 521, writ denied 15-684 (La. 2/26/16), 187 So.3d 468. The trial court is vested with much discretion in determining which opinion testimony shall be received into evidence as lay or expert testimony. State v. Friday, 10-2309 (La. App. 1 Cir. 6/17/11); 73 So.3d 913, 922, writ denied, 11-1456 (La. 4/20/12); 85 So.3d 1258. The defendant in this case objected to the detectives’ opinion testimony concerning the items recovered from the search of the hotel room and their usage. In particular, pursuant to the prosecutor’s- questioning, the detectives explained the tools for making and distributing crack cocaine— glass beaker, baking soda, razorblade, scales and plastic baggies. The detectives, each having more than | ^twenty-four years of service with the NOPD and at least twenty years- combined experience with the narcotics division and undercover operations, stated that their personal observation of the items confiscated in the hotel room, and their training and knowledge of narcotics and extensive interaction with confidential informants, led them to the conclusion the defendant was manufacturing crack cocaine in the hotel room and preparing it for distribution. Clearly, the detectives’ training, years of experience and personal observations discredit the defendant’s complaint concerning their qualifications to conclude the defendant possessed with intent to distribute crack cocaine. This assignment has no merit. ASSIGNMENT OF ERROR NUMBER 6 In his final assignment of error, the defendant complains of prosecutorial misconduct during closing arguments, during which the prosecutor referred to defense counsel as a liar and referenced facts not in evidence. Generally, “prosecutors are allowed wide latitude in choosing closing argument tactics.” State v. Clark, 2012-0508, p. 92 (La. 12/19/16), 220 So.3d 583, reh’g denied (Mar. 13, 2017), citing State v. Frank, 99-0553, p. 26 (La. 5/22/07), 957 So.2d 724, 741. The trial judge has broad discretion-in controlling the scope of closing arguments. Id., citing State v. Prestridge, 399 So.2d 564, 580 (La. 1981). The court will not reverse a conviction on the basis of improper closing argument unless it is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. Id., citing State v. Martin, 93-0285 (La. 10/17/94), 645 So.2d 190. See also United States v. Rodriguez, 43 F.3d 117, 124 (5th Cir.1995) (“prosecutorial misconduct must be so pronounced and persistent that it casts serious doubt upon the correctness of the jury’s verdict.”) One portion of the State’s closing argument about which the defendant complains, is as follows: Detective Favaroth’s not lying to you. Sergeant Rome’s not lying to you. Detective Moore’s not lying to you. Detective Burke’s not lying to you. Every person sitting at that table over there is lying straight to your face. And it’s almost insulting. In State v. Dabney, 2015-0001(La. App. 4 Cir. 9/9/15), 176 So.3d 515, writ denied, 2015-1852 (La. 10/17/16), 208 So.3d 374, the prosecution branded defense counsel a liar. Although this Court found the prosecutor’s statement “crass”, it found no prejudicial error because in Dabney, as in this case, the trial court properly instructed the jurors prior to their deliberation that the attorneys’ arguments were not evidence. Another portion of closing argument the defense objects to concerns the prosecution’s purported reference to a “kick back” scheme, which the defense contends there was no evidence of: ... I was trying to figure out why would Anastasia Brown come in herb and lie. And I thought back to something that Detective Favaroth mentioned while he was on the stand earlier that morning. He didn’t really run with it. He didn’t explain it a lot, and said, you know, during that investigation, and I’ve been doing this for about 25 years, investigating drug crimes, he said I think that [the defendant] who’s been selling drugs throughout the City of New Orleans since at least 2008, probably had somebody working for him, maybe kicking them a little bit of money to keep his name off the books, to keep him protected, to keep him clean. The foregoing reference by the prosecution was prompted by information elicited by the defense during its cross examination of Detective Favaroth. 1 ^Defense counsel questioned Detective Favaroth if it was his testimony that the defendant chose to access the fourth floor of the LaQuinta Inn through the back door because the defendant knew the surveillance camera at that location was not operational. Detective Favaroth opined: A. I think they probably had someone working at the hotel with [the defendant] because certain cameras were not working to go up to the fourth floor. Q. Oh, he had somebody working with him in conspiracy with him? A. I believe so. Q. Do you have any idea who that could be? A. No. I can’t pinpoint it, but I believe so, because certain cameras were not working going to that location. The rear door, they have a camera down there, wasn’t working. The camera that’s on the fourth floor wasn’t working. But like I said, when we looked at the monitors, I saw all the other cameras—I don’t know what cameras they were going to. There is no indication the defense objected to the comment and it appears the prosecutor was simply commenting on the testimony elicited by the defense. Detective Favaroth expressed an opinion regarding matters of personal knowledge gained through training and experience in his field. In State v. Martin, 93-0285 (La. 10/17/94), 645 So.2d 190, 200, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995), the Louisiana Supreme Court noted that “much credit should be accorded to the good sense and fair mindedness of jurors who have seen the evidence and heard the arguments, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence.” This assignment has no merit. ^CONCLUSION In the absence of a record of the conference(s) in which cause and peremptory challenges were decided and considering the court reporter’s attestation that said portion of the record is impossible to reconstruct, there is no way to determine the merit of the defendant’s claim he has been denied his constitutional right to complete judicial review on appeal. Accordingly, we set aside the defendant’s conviction and sentence and remand this matter for new trial. CONVICTION AND SENTENCE VACATED; REMANDED . Detective later testified in rebuttal 'that anyone who testified that officers obtained a key to room 408 from Mr. Durand or spoke to Anastasia Brown would be lying as the defendant gave a key to room 408 to the officers. . Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). : La. C.E. art. 514 provides in pertinent part: Art. 514. Identity of informer A. General rule of privilege. The United States, a state, or subdivision thereof has a privilege to refuse to disclose, and to protect another from required disclosure of, the identity of a person who has furnished information in order to assist in án investigation of a possible violation of a criminal law. B. Who may claim the privilege. The privilege may be claimed by' the prosecuting authority or an appropriate representative of the public entity to which the information was furnished.