# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-458


**STATE OF LOUISIANA**

**VERSUS**

**BRIAN MICHAEL HUGHES**

**\*\*\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 16-490
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***
## SYLVIA R. COOKS
## JUDGE
**\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and Shannon J. Gremillion, Judges.

### REVERSED; CONVICTION AND SENTENCE VACATED.

**James P. Lemoine**
**District Attorney, Thirty-Fifth Judicial District**
**Jimmy D. White**
**Assistant District Attorney, Thirty-Fifth Judicial District**
**P. O. Box 309**
**Colfax, LA 71417**
**(318) 627-2971**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598**
**(337) 991-9757**
**COUNSEL FOR APPELLANT:**
  **Brian Michael Hughes**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On April 20, 2016, Sergeant Robert Murphy of the Louisiana State Police was traveling southbound on Highway 167 when he noticed Defendant, Brian Michael Hughes, leaning against a vehicle in the teacher's parking lot of Grant Junior High School, near Dry Prong, Louisiana. Sergeant Murphy turned around and approached Defendant. It appeared to Sergeant Murphy that Defendant was under the influence of something, and a field investigation was conducted. Mr. Smith, the principal of the school, arrived on the scene and indicated he wanted Defendant, who did not have permission to be at the school, charged with criminal trespassing. Defendant was arrested, and during a search incident to the arrest, Grant Parish Sheriff's Officer Danny Hebert, located a clear, plastic baggy containing a hard, clear substance which appeared to be crystal methamphetamine in Defendant's pocket.

The seized substance was weighed at the Grant Parish Sheriff's Office on scales at the station. The clear, plastic baggy, later identified in evidence as S-1, was determined to weigh 2.3 grams. In a later weighing of S-1 at the North Louisiana Crime Lab (hereafter Crime Lab), it was determined to weigh 1.73 grams. The substance was also tested by the Crime Lab and determined to be methamphetamine.

Defendant was subsequently charged by bill of information with possession of methamphetamines, a violation of La.R.S. 40:967(C). He was found guilty as charged and was sentenced to five years at hard labor. Defendant is before this court seeking review of his conviction. For the following reasons, we find merit in Defendant's contention that the weight discrepancy of the substance measured by the Grant Parish Sheriff's Department (2.3 grams) and the weight recorded by the

2

analyst at the Crime Lab (1.73 grams) provided reasonable doubt as to whether the lab received and analyzed the same evidence taken from Defendant's pocket. Thus, we reverse Defendant's conviction.

## ANALYSIS

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

Defendant was convicted of possession of methamphetamine, which required the State to prove that he was in possession of the methamphetamine and he knowingly possessed it. In his lone assignment of error, Defendant contends the State presented insufficient evidence to prove him guilty of the charged offense, in that the weight discrepancy of the substance measured by the Grant Parish Sheriff's Department (2.3 grams) and the weight recorded by the analyst at the crime lab (1.73 grams) amounted to reasonable doubt that the lab received and analyzed the same evidence taken from Defendant's pocket and weighed at the Sheriff's office.

The analysis for claims concerning sufficiency of the evidence is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). *In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of*

3

*proving the elements of the crime beyond a reasonable doubt.* (Emphasis added.)

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant elicited testimony at trial as to the discrepancy in the weights taken by the Sheriff's Office and at the Crime Lab. Sergeant Hebert of the Grant Parish Sheriff's Office testified that he seized a hard, clear substance in a small, clear, plastic bag from Defendant's front pocket on April 20, 2016, introduced as State's Exhibit #1 at trial. Sergeant Hebert placed the seized bag inside an evidence bag to be sent to the Crime Lab in Alexandria, where it was determined to be crystal methamphetamine. Sergeant Hebert testified that the substance in the small bag weighed 2.3 grams on the office scale *provided by the Crime Lab*.

Alana Brauer, a forensic chemist with the Crime Lab, testified that the substance, determined to be methamphetamine, weighed 1.73 grams with the "inner bag" included. This weight discrepancy between the seizing agency total and that of the Crime Lab amounts to slightly more than a twenty-five percent (25%) difference. The State, in an attempt to explain the weight discrepancy, called Ms. Brauer to the stand, who testified concerning the different weights, and how such a result could occur, explaining as follows:

Q       Okay, uh, do you know whether or not they field tested the substance out on the field and - - and used part of it for that color test that you describe[d] earlier?

A       I do not know that.

Q       If that happened, that could be a re- - cause for the reduction in the weight, is that correct?

A       That much of a change, no. That would be a bit excessive for a field test but it's probably the balance itself.

Q       What do you mean by that?

A       Um, I don't know what kind of balances they have at the station, so our balances per our accreditation standards, they have to be calibrated yearly. Um, and we do monthly checks on them to

4

ensure that they still weigh, if we put a two hundred (200) gram known weight that it weighs two hundred (200) grams.

Q    Okay.

A    So, it could be whether or not their balances are maintained as to the - - to the extent that ours are.

We find this testimony, even when viewing it in a light most favorable to the prosecution, falls short in explaining such a significant weight difference. We find it unreasonable to accept as evidence the mere hyperbolized offering of Ms. Brauer that perhaps the weight discrepancy in excess of twenty-five percent can be explained by a failure to maintain balance and calibration in the scales. This explanation is particularly lacking when considered against the backdrop that the scales in question were provided to the Grant Parish Sheriff's Department by the Crime Lab. Further, the burden to establish the chain of evidence rests with the State. The State failed to present any credible evidence to substantiate Ms. Brauer's attempt, after being pressed for an explanation, to provide a good guess. The State did not offer testimony from or documents prepared by the Sheriff's Office custodian of evidence attesting to the fact that the scale was improperly balanced during the relevant time period, or that there were other similar discrepancies of evidence weighed during the period, all suggestive that the scale was not properly balanced. Ms. Brauer was not the custodian of the weight scale once it was delivered to the Sheriff's Office.

We find very instructive the concurring opinion of Justices Tate and Dennis in *State v. Francis*, 345 So.2d 1120 (La. 1977). In that case, the substance in question, purchased from the defendant, was initially listed to be 6.53 grams, but was later determined to be 10.79 grams when weighed by a trained chemist. Noting this discrepancy in weight, the concurring justices felt "a serious issue was presented as to whether the chain of custody [was] adequately proved." *Id*. at 1127. In addressing the pertinent law surrounding a situation such as was

5

presented here where there was a marked discrepancy in weight between the substance originally seized from a defendant and later tested in the lab, the justices stated:

> [A] different issue is presented where the evidence suggests substantial doubt as to the identity or connexity between the incriminating object purchased and the object offered for introduction into evidence.
>
> As stated by McCormick on Evidence, Section 212 at pp. 527--28 (2d ed. 1972): ". . . if the offered evidence is of such a nature as not to be readily identifiable, or to be susceptible to alteration by tampering or contamination, sound exercise of the trial court's discretion may require a substantially more elaborate foundation. A foundation of the latter sort will commonly entail testimonially tracing the 'chain of custody' of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with."
>
> In the present case, substantial doubt that the substance introduced in evidence (analyzed as containing heroin) is the identical substance purchased from the accused may well arise: The evidence shows that the substance analyzed at the laboratory had a gross weight of 10.79 grams, while the allegedly illegal substance purchased had a gross weight of only 6.53 grams.
>
> Upon the trial court's noting this gross discrepancy in weight, or upon proper objection by the accused, the evidence should have been excluded as not having been shown more probably than not to be relevant; or else, before its admission, the state should have been at least required by way of further foundation to reasonably explain the discrepancy so as preponderantly to show the requisite connexity.

In *Francis*, the justices concurred because trial counsel did not object to or explore the issue of whether the weight discrepancy cast doubt upon the identity of the substance introduced in evidence as that purchased from the accused. Thus, they felt the State was denied the opportunity to "[produce] a satisfactory explanation for the discrepancy." *Id.* at 1128. In this case, Defendant explored this issue at trial, and as set forth above, we find the testimony of Alana Brauer does not offer a reasonable, plausible explanation for the weight discrepancy. Her only explanation was that she "[did not] know what kind of balances they have at the station . . . [s]o it could be whether or not their balances are maintained as to the - - to the extent

6

that ours are." The record establishes the scales at the Grant Parish Sheriff's Office *were provided by the Crime Lab*.

We find the State failed to reasonably explain the weight discrepancy between the substance seized and weighed at the Sheriff's Office and the substance tested at the Crime Lab and introduced into evidence. Evidence is not relevant unless identified or authenticated as connected with the case. *State v. Foret*, 196 La. 675, 200 So. 1 (1941). If prejudice results from the trial court's erroneous admission of irrelevant evidence, the defendant upon appeal is entitled to a reversal of his conviction. *Id.* As the concurring justices noted in *Francis*, 345 So.2d at 1128, "[u]pon the trial court's noting this gross discrepancy in weight, . . . the evidence should have been excluded as not having been shown more probably than not to be relevant."

As Defendant notes, the concurrence in *Francis* recognized that weight discrepancy can present a relevancy issue separate from chain of custody when the evidence suggests substantial doubt as to the identity or connexity between the item seized and what is introduced into evidence.

In this case, the State presented testimony as to the handling of the evidence. Despite this, the significant weight discrepancy creates reasonable doubt that the Crime Lab received and analyzed the same evidence Sergeant Hebert testified he seized from Defendant's pocket and weighed at the Sheriff's office. Ms. Brauer testified that the substance she examined had a weight of only 1.73 grams, not the 2.3 grams Sergeant Hebert testified he seized from Defendant.

For the reasons expressed above, we find the lack of a reasonable or legally plausible explanation regarding the weight discrepancy between the substance seized from Defendant and what was offered into evidence establishes reasonable doubt that the original item was either exchanged with another or was tampered

with in some untoward way. Thus, we find Defendant's guilty verdict must be set aside because the State failed to prove his guilt beyond a reasonable doubt.

## DECREE

For the foregoing reasons, Defendant's conviction and sentence on possession of methamphetamines is reversed and vacated.

**REVERSED; CONVICTION AND SENTENCE VACATED.**